**Larry COLLINS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Feb. 11, 1980.

Decided July 28, 1980.

Mary C. Boudart (argued), Wilmington, for defendant below, appellant.

Lucille K. Cirino (argued), Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., McNEILLY and HORSEY, JJ.

HORSEY, Justice:

Defendant, Larry Collins, was indicted for murder in the first degree and convicted in Superior Court in trial by jury of murder in the second degree, that is felony murder, in violation of 11 *Del.C.* § 635(2)[1] and was sentenced to life imprisonment. His appeal

---

1. 11 *Del.C.* § 635(2) provides:
 "A person is guilty of murder in the second degree when:

 \* \* \* \* \* \*

 (2) In the course of and in furtherance of the commission or attempted commission of

any felony not specifically enumerated in § 636 of this title or immediate flight therefrom, he, with criminal negligence, causes the death of another person."

asserts four grounds for reversal of the judgment.

I

The facts relevant to the appeal are as follows:

Indicted for murder in the first degree for an unrelated crime involving two co–defendants who had given statements accusing him of the offense, defendant accepted the State's offer to plead guilty to manslaughter. Defendant then, through his court–appointed attorney, informed the State that he wished to make a statement concerning other criminal activity implicating himself and the aforementioned co–defendants–provided that he be given immunity for the criminal activity to be disclosed. The State's attorney responded by orally informing defendant's counsel that defendant would be given immunity as to robberies and any other criminal activity except homicide and rape.[2]

Defendant's attorney, an experienced and knowledgeable trial lawyer, relayed the immunity offer to defendant who accepted it. Apparently counsel did not question defendant as to what criminal activity defendant wished to disclose. Indeed, counsel did not explain the grant of immunity in great detail, but stated that he was confident that defendant understood what immunity was and the scope of this limited grant. Counsel was also aware that defendant's education was limited; that he had a low IQ; and that defendant was not "mentally acute."

Counsel's recollection of the State's explanation of its immunity offer was that it was not "elaborate[ly]" detailed but was simply stated that the State's immunity offer would not extend to any criminal act resulting in death. The agreement was not reduced to writing; and the State, before taking defendant's statement, admittedly did not advise defendant that if he gave a statement about robbery (or other offense) from which a death later resulted, the State reserved the right to prosecute for that death.

Defendant then proceeded to divulge to the police his involvement, along with his companions, in an armed robbery of a huckster in Wilmington in November, 1973. Defendant stated that he had struck the victim on the head with a shotgun, taken the victim's wallet, and fled.

At that point the police, believing defendant to have identified a victim who later died from his injuries, interrupted defendant to warn him that the robbery in question may have resulted in a homicide and terminated the interview. Defendant's November 1973 robbery victim had, in fact, died the following May from injuries received in the robbery.

Defendant was subsequently indicted for felony murder, armed robbery, conspiracy, and possession of a deadly weapon during the commission of a felony—all rising out of the admitted 1973 incident. The State nolle prossed all the charges against defendant other than the felony murder count.[3] The Court refused to dismiss the murder charge, reasoning that the State had not actually granted defendant immunity from any robbery or similar offense but had simply "agreed not to prosecute" defendant for any offense except rape or homicide. Since felony murder involved a homicide, the Trial Court concluded that the State's agreement did not extend to prosecution for that crime.

For the reasons hereafter stated, we find that defendant was immunized from conviction of second degree felony murder but not from the lesser included offense of manslaughter; we reject defendant's other grounds for reversal; and we remand for resentencing of defendant for manslaughter.

---

2. Defendant's counsel recalled State's offer was to give immunity for all offenses disclosed other than homicide, though he conceded that rape may have been mentioned. However, since rape did not prove to be a factor in the case, this discrepancy is immaterial.

3. A formal dismissal of such charges filed by the State after defendant was convicted of second degree murder expressly stated that defendant had been granted "immunity" as to each of the other charges.

## II

■ We first consider Collins' contention that the indictment was fatally defective in (1) failing explicitly to charge defendant with recklessly causing the death of the victim in accord with 11 *Del.C.* § 636(a)(2); and (2) failing to allege that the victim's death was caused in "the course of and in furtherance of the commission" of the felony. We find neither defect to be reversible error.

The indictment charged that defendant and another, "during the commission of a felony of robbery first degree upon Walter R. Slattery, as contained in Count I of this Indictment, did recklessly strike said Walter R. Slattery on the head with a shotgun inflicting injury which caused the death of Walter R. Slattery on May 28, 1974." Conceding that the indictment misplaced the word "recklessly" and omitted the statutory language that defendant recklessly caused the death of another "in the course of and in furtherance of the commission" of the felony, the State contends the indictment was sufficiently clear to put defendant on notice of the crime with which he was charged so as to permit him to prepare a defense and to avoid double jeopardy. We agree. See *McCoy v. State*, Del.Supr., 361 A.2d 241 (1976).

The indictment clearly charged defendant with a homicide occurring "during the commission of a felony." Despite the omitted words from § 636(a)(2), it was nonetheless patently clear from the indictment that defendant was charged with a reckless homicide occurring in the course of the commission of a felony. *See Pepe v. State*, Del. Supr., 171 A.2d 216 (1961), appeal dismissed per curiam, 368 U.S. 31, 82 S.Ct. 145, 7 L.Ed.2d 90 (1961). Similarly, the misplacement within the indictment of the term "recklessly" so as to modify the verb "strike" rather than the phrase "caused the death" of the victim cannot reasonably be construed as not charging defendant with lessly causing the death of the victim. Again, while inartfully drawn, the indict-ment was sufficiently clear to put defendant on notice that he was charged with recklessly causing the death of the victim. It cannot reasonably be contended that defendant was thereby misled to his prejudice or that he was without full notice that he was charged with felony murder in violation of 11 *Del.C.* § 636(a)(2).

Since we find that the indictment was sufficient to support a charge of first degree felony murder requiring a reckless state of mind, it is *a fortiori* sufficient to support a conviction of second degree felony murder requiring a lesser degree of criminal *mens rea*, namely criminal negligence.

## III

Next, defendant contends that State's grant to defendant of immunity from prosecution for all crimes except homicide and rape barred his prosecution and conviction for felony murder in violation of 11 *Del.C.* § 635(2). Defendant says this is so because an essential element of such an offense is the commission of a felony, here robbery, for which defendant had been granted immunity.

The State responds that defendant was not granted immunity *per se* from all criminal offenses other than homicide or rape; rather the State only entered into an agreement not to prosecute defendant for specified crimes—to wit, any crime other than homicide or rape. Thus, when defendant voluntarily divulged his participation in a criminal act that resulted in a homicide, he put himself outside the agreement; and the State was not precluded from prosecuting Collins for any homicide offense, including felony murder. We disagree.

■ The parties spoke in terms of immunity and not in terms of an agreement not to prosecute for certain offenses. Defendant stated that he wanted immunity; and the State responded by offering him immunity—in a limited form. The word "immunity" was expressly used by both sides in their discussions with each other.[4] Thus,

---

4. The police officer who recounted the agreement entered into between the State and de-fense counsel recalled it as being "that [the State's attorney] would give him [defendant]

we conclude that the parties clearly reached an agreement as to immunity of defendant from all crimes other than homicide or rape. This, then, brings us to 11 *Del.C.* § 475.[5]

■ Section 475 recognizes the power of the Attorney General and his deputies, or the Court, under § 3506, to grant immunity from prosecution in two respects. The first sentence permits an affirmative defense based on immunity as to prosecution "for that offense" for which immunity has been granted. The second sentence then covers immunity that is based on that granted "for a different offense." But as to the latter, § 475 reads:

"It is also an affirmative defense that the accused was granted immunity from prosecution for a different offense when prosecution for the offense [sic] as to which immunity was granted under § 208 of this title, provided that the Attorney General or his deputy may, in granting immunity, stipulate that the immunity applies only to a specific offense, in which case effect shall be given to the stipulation."

It is obvious that the second sentence of § 475 has been garbled so as to be unintelligible and hence incapable of application as written. But it would appear that this results from an omission of significant words after the words "the offense" and immediately before the words "as to which immunity was granted under § 208 of this title." As it reads, the sentence is incomplete; the phrase, "when prosecution for the offense" has been left dangling without

a verb and modifiers necessary to complete the sentence.

The omitted language is to be found in the legislative history of the enactment of § 475 as well as the Commentary on § 475 as it was originally proposed for enactment. Section 475 originated in Senate Bill 356 of the 126th General Assembly which in turn is based upon § 281 of the Governor's Committee for Revision of the Criminal Law (1967). This section as proposed by the Governor's Committee *and* as introduced in the Senate read as follows:

"In any prosecution for an offense, it is an affirmative defense that the accused was granted immunity from prosecution for that offense by the Attorney General or his deputy or by Court order pursuant to section [3506] of this Criminal Code. It is also an affirmative defense that the accused was granted immunity from prosecution for a different offense when prosecution for the offense <u>now charged would have been barred by prosecution for the offense</u> as to which immunity was granted under the provisions of section [208] of this Criminal Code, provided that the Attorney General or his deputy may, in granting immunity, stipulate that the immunity applies only to a specific offense, in which case effect shall be given to the stipulation." Proposed Delaware Criminal Code § 281 (1967); Senate Bill 356, 126th General Assembly, § 476. (The underlined words were omitted from the Bill as enacted).

The omitted language also appears in § 475 of the Delaware Criminal Code with Com-

immunity to all offenses except rape and homicide." And, defense counsel's contemporaneous office notes of his conversation with the State were that "they [the State] would give immunity for everything he [defendant] disclosed, other than homicide." Moreover, as stated above, the Notice of *Nolle Prosequi* entered by the State on charges of robbery, conspiracy and possession of a deadly weapon during the commission of a felony cited as the reason, "Defendant [has been] granted immunity on these charges."

**5.** 11 *Del.C.* § 475 provides:

"*§ 475. Immunity as an affirmative defense.*

    In any prosecution for an offense, it is an affirmative defense that the accused was granted immunity from prosecution for that offense by the Attorney General or his deputy or by court order pursuant to § 3506 or this title. It is also an affirmative defense that the accused was granted immunity from prosecution for a different offense when prosecution for the offense as to which immunity was granted under § 208 of this title, provided that the Attorney General or his deputy may, in granting immunity, stipulate that the immunity applies only to a specific offense, in which case effect shall be given to the stipulation. (11 *Del.C.* 1953, § 475; 58 Del.Laws, c. 497, § 1.)"

mentary (1973) which was published after the enactment of 58 *Del.Laws*, c. 497, § 1. And, § 475 of the Delaware Criminal Code with Commentary appears exactly as § 475 was obviously intended to have been enacted into law. Further, the Commentary to § 475 of the Delaware Criminal Code (1973) reaffirms the second of the two–fold purposes of the immunity statute, namely, to extend immunity under certain circumstances "to cases in which the accused was granted immunity from prosecution for a different offense", stating as follows:

> "This section gives an affirmative defense that the accused was granted immunity from prosecution for a particular offense, either by private agreement with the Attorney General or his deputy or by Court order as permitted by § 3508 of Title 11. *The defense also extends to cases in which the accused was granted immunity from prosecution for a different offense if an actual prosecution for that offense would have barred a subsequent prosecution for this offense under the terms of § 208.* The Attorney General or his deputy may limit any agreement of immunity by stipulating that it applies only to a specific offense. It is appropriate that any private agreement with the Attorney General be reduced to writing, so that there can be no contradictory assertions as to the scope of the agreed–on immunity." (Emphasis added).

In light of this legislative history, we conclude the language omission was clearly inadvertent and should be read back into the Statute in order for immunity from prosecution for a different offense to be given its intended effect. Under settled rules of statutory construction, it is the duty of this Court to do so. *Mayor and Council of Wilmington v. Dukes*, Del., 157 A.2d 789 (1960); 2A Sutherland, *Statutory Construction*, § 47.38 (3rd ed. 1973).

As construed and with the omitted words inserted, § 475 can be analyzed as providing as follows: (1) where a limited immunity has been granted and a subsequent prosecution for a crime not covered by the immunity is commenced, the immunized crimes must be treated as acquittals for purposes of application of § 208; (2) applying the criteria of § 208, it must be determined whether prosecution for the further offense is barred; and (3) if so, the prosecution may not be permitted under § 475.

In order to apply Step (2), it is necessary to understand 11 *Del.C.* § 208.[6] Section 208 is a codification of the bar of former jeopardy which provides that a second prosecution is barred where the defendant has been, as specifically outlined in that section, in jeopardy for the latter prosecuted crime in an earlier prosecution.

▮ In applying § 475 to the case at hand, we conclude: (1) that a limited immunity was granted defendant for any robbery

**6.** 11 *Del.C.* § 208 provides:

"§ 208. *When prosecution is barred by former prosecution for different offense.*

Although a prosecution is for a violation of a different statutory provision or is based on different facts, it is barred by a former prosecution in a court having jurisdiction over the subject matter of the second prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal which has not subsequently been set aside or in a conviction as defined in § 207 of this title and the subsequent prosecution is for:

a. *Any offense of which the defendant could have been convicted on the first prosecution*; or

b. The same conduct, unless:

1. The offense for which the defendant is subsequently prosecuted requires proof of a fact not required by the former offense and the law defining each of the offenses is intended to prevent a substantially different harm or evil, or

2. The second offense was not consummated when the former trial began.

(2) The former prosecution was terminated by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed or vacated and which acquittal, final order or judgment necessarily required a determination inconsistent with a fact which must be established for conviction of the second offense.

(3) The former prosecution was improperly terminated as improper termination is defined in § 207(4) of this title and the subsequent prosecution is for an offense of which the defendant could have been convicted had the former prosecution not been improperly terminated. (11 Del.C. 1953, § 208; 58 Del.Laws, c. 497, § 1.)"

offense; and for these purposes that immunity is treated as an acquittal; (2) that an acquittal of robbery requires a determination that defendant did not commit the predicate crime of robbery which is necessarily required for a finding of guilt of the offense of felony murder; (3) hence, felony murder prosecution of defendant under § 632(2) is barred by defendant's acquittal through immunity of the underlying robbery.[7]

## IV

Defendant argues that the statement he gave cannot be used against him because it was "incriminating when given." By that, defendant apparently means that since the State contends that immunity had not been extended for the felony murder offense, his testimony was thereby incriminating and inadmissible under *United States v. Smith*, 2d Cir., 206 F.2d 905 (1953). He contends that had he realized his admission to the 1973 robbery subjected him to prosecution for homicide, he would have asserted his Fifth Amendment privilege against self–incrimination.

The short answer is that defendant was not compelled to testify as to the 1973 robbery but volunteered to do so, and did so knowing that the State had reserved the right to prosecute him for any homicide or rape. *Smith* is clearly distinguishable since there the witness, after being *compelled* to testify before an administrative agency under a grant of immunity similar in scope to that provided under 11 *Del.C.* § 3506, was subsequently prosecuted for violations as to which immunity had been granted. Here defendant gave an entirely voluntary statement with full knowledge that he was not granted immunity as to prosecution for homicide or rape. The fact that defendant only intended to confess to a robbery and did not know his actions had resulted in the death of his victim does not vitiate his confession. We find defendant's statement was properly admitted and could be used against defendant for purposes of prosecuting him for a homicide other than felony murder.

## V

Defendant next argues that his statement was inadmissible because he had not made a knowing and intelligent waiver of his Fifth Amendment rights in the absence of a *Miranda* warning and an adequate explanation of the State's conditional offer of immunity. This argument does not withstand scrutiny.

Since defendant's statement was voluntarily given, no *Miranda* warning was required. The rule established in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and its progeny is confined to custodial interrogation which has been interpreted to mean situations where a suspect has been detained by officials for questioning about his involvement in an alleged crime. Here, defendant did not require *Miranda* warnings for two reasons: (1) he was not a suspect in the crimes about which he offered his statement; and (2) there was no interrogation. His statement was truly voluntary. *Klamert v. Cupp*, 9th Cir., 437 F.2d 1153 (1970); *Mikulovsky v. Schubert*, D.Wisc., 416 F.Supp. 55 (1976); *Lockridge v. State*, Ind.Supr., 263 Ind. 678, 338 N.E.2d 275 (1975). *See, generally, Anno: Custodial Interrogation–Miranda Rule*, 31 A.L.R.3d 565 (1970).

*Miranda* warnings are also rendered unnecessary and superfluous where counsel for defendant is present and defendant has been given an adequate opportunity to consult with counsel prior to the giving of any statement. *See United States v. Falcone*, 2nd Cir., 544 F.2d 607 (1976), cert. denied 430 U.S. 916, 97 S.Ct. 1329, 51 L.Ed.2d 595 (1977); *Frohmann v. United States*, 8th Cir., 380 F.2d 832 (1967), cert. denied 389 U.S. 976, 88 S.Ct. 478, 19 L.Ed.2d 469 (1967); *United States v. Thevis*, D.Conn., 469 F.Supp. 490 (1979). Here there is no evidence whatever that defend-

---

7. Although the final clause of § 475 gives the power to the Attorney General to limit grants of immunity to specific crimes and mandates that such stipulation be given effect, this power still must be limited by the provisions of § 208 as applied through § 475.

ant's will was "overborne" or that he did not understand that immunity did not extend to homicide. Thus, there is no merit to the contention that defendant's statement was not admissible for lack of a knowing and intelligent waiver. *See also, Hutto v. Ross*, 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976).

## VI

■ Defendant raises on this appeal for the first time a contention that, during negotiations leading to the grant of immunity and his subsequent confession, his counsel was ineffective. A suppression hearing was held below but defendant's objections to the admissibility of the confession were cast as a failure to give *Miranda* warnings and a lack of voluntariness of his statement. The Trial Court rejected both of these claims. The effective assistance of counsel question was not raised then or in any post–trial proceeding.

It is well settled in Delaware that the Court will not hear claims of ineffective assistance of counsel where they are raised for the first time on appeal, without an evidentiary hearing below, under Superior Court Rule 35 or otherwise, affording the accused counsel full opportunity to be heard. *Robinson v. State*, Del.Supr., 305 A.2d 307 (1973); *Harris v. State*, Del.Supr., 293 A.2d 291 (1972). Thus, we do not consider this issue.

## VII

■ Finally, defendant objects to the admission over objection of certain hearsay statements of the investigating officer. He had arrived on the scene, by varying accounts between five minutes and one hour after the attack. The statement taken from the victim was that he had been attacked by two black males, sixteen to eighteen years of age, five feet six inches in height, medium to dark complexions, and one wearing a hat. The officer testified that the victim gave a general physical description of the attackers and his account of the incident in a coherent fashion.

Overruling defense objections, the Trial Judge admitted the officer's testimony under the *res gestae* exception to the hearsay rule. The Trial Judge was referring to the "excited utterance" exception to the hearsay rule, the common law understanding of which has been embodied in Rule 803 of the Delaware Uniform Rules of Evidence (effective July 1, 1980) which provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

Inherent in this exception is the notion that the declaration is reliable because the declarant, under the duress of excitement, is not in a position to fabricate and will exclaim the truth as he perceives it. Implicit in the rule is a requirement that the statement be *contemporaneous or nearly contemporaneous* with the event described so that there is no time to fabricate the statement. *See* Rule 512, Model Code of Evidence (ALI 1942).

While there is some doubt as to how soon after the incident the statement was given, what is clear is that the victim gave his statement without confusion or equivocation, in narrative form, in the words of the police officer, "just [as if] he were on the witness stand." Even though the victim was dazed and bleeding, the apparent calm with which he spoke and the passage of time excludes this statement from the excited utterance exception to the hearsay rule. However, we find the error to have been harmless.

■ The well–established rule is that where the evidence exclusive of the improperly admitted evidence is sufficient to sustain a conviction, error in admitting the evidence is harmless. *Outlaw v. State*, Del. Supr., 327 A.2d 606 (1974). *Tucker v. State*, Del.Supr., 187 A.2d 429 (1963). In the case at bar, the complained of evidence was a physical description of the robbers given by

the victim. Defendant's description was generally corroborated by an eyewitness in her statement to the police and in her testimony at trial. Moreover, defendant's confession to the crime was in evidence.

## VIII

In conclusion, we find that defendant was improperly convicted and sentenced for murder in the second degree. However, we have found that the technical bar to prosecution imposed by 11 *Del.C.*, § 475 was the only error in defendant's trial requiring reversal. Defendant was susceptible to conviction of the lesser included crime of manslaughter, 11 *Del.C.* § 632(1). The indictment clearly charged this crime and the facts of record fully support such a conviction.

It is within the power of this Court under these circumstances to order a modification of the judgment below to reflect the reduction in the degree of homicide committed. *Rivera v. State*, Del.Supr., 351 A.2d 561 (1976); *Fuentes v. State*, Del.Supr., 349 A.2d 1 (1975). The modification does not deprive defendant of a fair trial or otherwise prejudicially affect his conviction. Therefore, we reverse and remand the case with directions to strike the conviction and sentence for murder in the second degree and to enter a judgment of conviction on the charge of manslaughter and for sentence thereon.