**John M. GANNON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 197, 1997.**

Supreme Court of Delaware.

Submitted: Dec. 9, 1997.

Decided: Jan. 7, 1998.

Edmund N. Hillis, Assistant Public Defender, Wilmington, for appellant.

Timothy J. Donovan, Jr., Deputy Attorney General, Wilmington, for appellee.

Before VEASEY, C.J., WALSH, and HOLLAND, JJ.

HOLLAND, Justice:

Following a jury trial in the Superior Court, the defendant-appellant, John Gannon ("Gannon"), was found guilty of five counts of Burglary in the Second Degree, three counts of Theft Felony, and one count of Theft Misdemeanor. Gannon was subsequently declared an habitual offender pursuant to 11 *Del.C.* § 4214(b) and sentenced to life imprisonment at Level V without the possibility of parole. This is Gannon's direct appeal of his convictions and sentences.

At Gannon's trial, a witness for the State was permitted to testify about statements made to him over the telephone by his young daughter, soon after she had heard an intruder in their home. Gannon contends that this testimony was hearsay, and did not qualify under any exception to the hearsay prohibition. Gannon also argues that, by permitting this hearsay testimony, his rights of confrontation under both the Constitution of the United States and the Delaware Constitution were violated.

We have concluded that each of Gannon's contentions is without merit. The testimony offered by the witness about his daughter's remarks satisfied the requirements of the "spontaneous declaration" or "excited utterance" exception to the hearsay rule. The admission of those statements did not violate Gannon's right of confrontation under either the Constitution of the United States or the Delaware Constitution.

### *Facts*

The charges against Gannon arose in connection with five burglaries in the Wilmington area in 1995. On August 7, 1995, residents in the Fairfax neighborhood, north of Wilmington, called the police to report a person knocking on doors in an unusual manner. Upon arrival, the police were directed by a neighbor to the house where the suspicious person was last seen. The police surrounded the house and obtained a key. Police entered the home, conducted a search, and located Gannon hiding in the basement.

Subsequent to his arrest, Gannon provided the police with information regarding his involvement in two additional burglaries on Old Point Road and Monticello Road. The police obtained a search warrant to search Gannon's vehicle. Several items were seized from his vehicle, including jewelry, a camcorder, and a black overnight bag. The camcorder and jewelry were identified as having been stolen from an Amherst Drive home. The identification tag on the overnight bag linked Gannon to the burglary of a Waverly Road home.

At Gannon's trial, homeowners from each residence testified for the State that Gannon was not authorized to enter their residences or to remove any items. One homeowner began to testify regarding statements made to him over the telephone by his daughter soon after the alleged burglary. Gannon's attorney objected to the testimony. At side bar, the attorneys presented arguments regarding whether the testimony was impermissible hearsay, or fit within either the "excited utterance" or "present sense impression" exceptions to the hearsay prohibition. Gannon's attorney also objected to the hearsay evidence on the basis that it would violate Gannon's constitutional rights of confrontation. The Superior Court overruled the objections.

### Excited Utterance
### Hearsay Rule Exception

Although hearsay testimony is generally inadmissible as evidence at trial, there are many exceptions to the rule. *See* D.R.E. 803(1–25) and 804. The first question presented in this appeal is whether the daughter's remarks to her father qualified as a spontaneous declaration under the "excited utterance" exception to the hearsay rule. An "excited utterance" is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." D.R.E. § 803(2).

■ There are three foundational requirements which must be met before a statement can be admitted pursuant to the excited utterance exception in Rule 803(2). *See* Graham C. Lilly, *An Introduction to the Law of Evidence* § 7.9 (3d ed.1996) (Excited Utterance). *See also 2 McCormick on Evidence* § 272 (John William Strong, ed., 4th ed.1992). The exception requires: (1) the excitement of the declarant must have been precipitated by an event; (2) the statement being offered as evidence must have been made during the time period while the excitement of the event was continuing; and (3) the statement must be related to the startling event. 6 Wigmore, *Evidence* § 1750 (Chadbourn rev.1976). A variety of factors have been considered by courts in determining whether the foundational requirements have been met to qualify the statement being offered into evidence as an excited utterance. *See* Graham C. Lilly, *An Introduction to the Law of Evidence* § 7.9 (3d ed.1996).

In this case, the witness testified about statements his daughter had made to him, over the telephone, about ten to fifteen minutes after she had heard noises in their home. At the time of the telephone call, the witness's daughter was about 12 years old and was home alone. The witness testified that his daughter stated she was sleeping in her upstairs bedroom and heard her dog barking and footsteps on the stairs. He testified that she told him she called out to see if it was her mother, received no reply, and then heard someone descending the stairs. The witness testified that his daughter told him that she waited before leaving her room to investigate the noise, and when she went downstairs, she found the sliding door open. The witness stated that his daughter seemed frightened when she was speaking to him over the telephone.

■ The record reflects the daughter's statements to her father satisfied all three of the foundational requirements to qualify as "excited utterances." D.R.E. 803(2). Therefore, the Superior Court properly admitted the statements made over the telephone to the witness by his daughter. Consequently, the hearsay aspect of Gannon's argument on appeal is without merit.

### Confrontation Clause
### United States Constitution
### Excited Utterance Exception

The second question presented by Gannon in this appeal is whether the admission of a spontaneous declaration, that qualified as an "excited utterance," violated his right of confrontation guaranteed by the United States Constitution. The United States Supreme Court has frequently considered the historical origins of the Confrontation Clause and the law of evidence on hearsay that was extant when the Sixth Amendment to the United States Constitution was adopted in 1791. *See Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895); Graham C. Lilly, *An Introduction to the Law of Evidence* § 7.29 (3d ed.1996) (The Confrontation Clause: Historical Context). In its examination of those subjects, the United States Supreme Court has acknowledged that "hearsay rules and the Confrontation Clause are generally designed to protect similar values." *California v. Green,* 399 U.S. 149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970). It has also recognized that both of those principles of jurisprudence "stem from the same roots." *Dutton v. Evans,* 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970).

The United States Supreme Court has concluded that "[t]he right of confrontation did not originate with the provision in the Sixth

Amendment, but was a common-law right having recognized [hearsay] exceptions." *Salinger v. United States,* 272 U.S. 542, 548, 47 S.Ct. 173, 175, 71 L.Ed. 398 (1926). Consequently, the United States Supreme Court has been careful "not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements." *Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990); *White v. Illinois,* 502 U.S. 346, 352, 112 S.Ct. 736, 740, 116 L.Ed.2d 848 (1992). "The historical evidence leaves little doubt, however, that the [Confrontation] Clause was intended to exclude some hearsay." *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980).

■ The courts in the United States, as in England, have adopted the general rule that hearsay evidence is inadmissible. *White v. Illinois,* 502 U.S. at 356, 112 S.Ct. at 742; Graham C. Lilly, *An Introduction to the Law of Evidence* § 6.1 (3d ed.1996) (General Principle and Rationale). The general preference for live testimony is attributable to the importance of cross-examination, which has been characterized as "the greatest legal engine ever invented for the discovery of truth." *California v. Green,* 399 U.S. at 158, 90 S.Ct. at 1935. *See* Graham C. Lilly, *An Introduction to the Law of Evidence* § 7.30 (3d ed.1996) (Early Construction of the Confrontation Clause). Nevertheless, the United States Supreme Court has concluded that "a statement that qualifies for admission under a 'firmly rooted' hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability." *White v. Illinois,* 502 U.S. at 357, 112 S.Ct. at 743. *See* Graham C. Lilly, *An Introduction to the Law of Evidence* § 7.31 (3d ed.1996) (Recent Interpretation of the Confrontation Clause). Consequently, the United States Supreme Court has held that "where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." *White v. Illinois,* 502 U.S. at 356, 112 S.Ct. at 743. Therefore, statements that qualify as a firmly rooted exception to the hearsay rule are admissible into evidence without a demonstration that the declarant is unavailable. *Id.* at 357, 112 S.Ct. at 743.

The hearsay exception for spontaneous declarations, or excited utterances, is "firmly rooted" in Anglo–American jurisprudence. *White v. Illinois,* 502 U.S. at 355 n. 8, 112 S.Ct. at 743 n. 8. This exception to the general hearsay rule is currently recognized by Federal Rule of Evidence 803(2) and the rules of evidence in almost every state. *Id.* It was recognized almost three centuries ago in *Thompson v. Trevanion,* Skinner 402 (1693). 6 Wigmore, *Evidence* § 1747, at 196 (Chadbourn rev.1976). "[T]he evidentiary rationale for permitting hearsay testimony regarding spontaneous declarations ... is that such out-of-court declarations are made in contexts that provide substantial guarantees of their trustworthiness." *White v. Illinois,* 502 U.S. at 355, 112 S.Ct. at 742.

■ The United States Supreme Court has held that the Confrontation Clause of the Sixth Amendment does not require that the prosecution either produce the declarant at trial or have the trial court find that the declarant is unavailable, before a trial court may admit testimonial evidence under the "spontaneous declaration" exception to hearsay rule. *White v. Illinois,* 502 U.S. at 356–57, 112 S.Ct. at 742–43. The Confrontation Clause in the Sixth Amendment, as construed by the United States Supreme Court, is applicable to state criminal proceedings by virtue of the Due Process Clause in the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965). *See* Michael Kent Curtis, *No State Shall Abridge: The Fourteenth Amendment and the Bill of Rights* (1986). Therefore, Gannon's rights under the Confrontation Clause of the United States Constitution were not violated by the admission into evidence of a spontaneous declaration that properly qualified as an excited utterance. *White v. Illinois,* 502 U.S. at 357, 112 S.Ct. at 743.

### *Delaware Constitution Confrontation of Witnesses Excited Utterance Exception*

The final question presented by Gannon in this appeal is whether admitting a statement

into evidence under the "excited utterance" exception to the hearsay rule violated his right of confrontation under the state Bill of Rights in Article I of the Delaware Constitution. Prior to the adoption of the Fourteenth Amendment, in a unanimous decision written by Chief Justice John Marshall in 1833, the United States Supreme Court specifically held that the federal Bill of Rights afforded no protection against any state's action. *Barron v. Baltimore,* 32 U.S. (7 Pet.) 243, 8 L.Ed. 672 (1833). In that opinion, Chief Justice Marshall explained why the entire federal Bill of Rights was intended solely as a limitation on the exercise of power by the government of the United States, and was not applicable to the legislation of the states:

> Each state established a constitution for itself, and in that constitution provided such limitations and restrictions on the powers of its particular government as its judgment dictated . . . .

> In their several constitutions [the states] have imposed such restrictions on their respective governments as their own wisdom suggested; such as they deemed most proper for themselves. It is a subject on which they judge exclusively. . . .

*Barron v. Baltimore,* 32 U.S. (7 Pet.) at 247–48. From the Declaration of Independence until the Civil War, state constitutional declarations or bills of rights were the primary guarantors of individual liberties against infringement by state governments.

1. In upholding New York's criminal anarchy statute the United States Supreme Court said, "For present purposes we may and do assume that freedom of speech and of the press—which are protected by the 1st Amendment from abridgment by Congress—are among the fundamental personal rights and 'liberties' protected by the due process clause of the 14th Amendment from impairment by the states." *Gitlow v. New York,* 268 U.S. 652, 666, 45 S.Ct. 625, 630, 69 L.Ed. 1138 (1925).

2. For discussions regarding the incorporation of the federal Bill of Rights into the Due Process Clause of the Fourteenth Amendment, thereby making them applicable to the states, see Louis Henkin, *"Selective Incorporation" in the Fourteenth Amendment,* 73 Yale L.J. 74 (1963).

3. *See* William J. Brennan, Jr., *The Bill of Rights and the States: The Revival of State Constitutions*

In 1925, there was a paradigm shift in the operation of America's state and federal jurisprudence. The United States Supreme Court began applying the Bill of Rights to the states by incorporating the federal Bill of Rights into the Fourteenth Amendment through the Due Process Clause.[1] Thereafter, the United States Supreme Court continued to hold that other selected provisions of the federal Bill of Rights also afforded protection against state action by virtue of the Due Process Clause of the Fourteenth Amendment, by the process now known as the incorporation doctrine.[2] Earlier in this opinion, we noted that the United States Supreme Court has held the Confrontation Clause in the Sixth Amendment is applicable to the states by virtue of the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965).

Federal Constitutional standards, however, set only a minimum level of protection.[3] The declaration of rights or substantive provisions in a state's constitution may, and often do, provide for broader or additional rights. *See* Jennifer Friesen, *State Constitutional Law: Litigating Individual Rights, Claims and Defenses* § 1–6 (2d ed.1996 & Supp. 1997). The expansion beyond federally guaranteed individual liberties by a state constitution is attributable to a variety of reasons: differences in textual language, legislative history, pre-existing state law, structural differences, matters of particular concern, and state traditions.[4]

*as Guardians of Individual Rights,* 61 N.Y.U.L.Rev. 535 (1986); William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights,* 90 Harv.L.Rev. 489 (1977).

4. *See* Robert F. Williams, *In the Glare of the Supreme Court: Continuing Methodology and Legitimacy Problems in Independent State Constitutional Rights Adjudication,* 72 Notre Dame L.Rev. 1015 (1997); Robert F. Williams, *In the Supreme Court's Shadow: Legitimacy of State Rejection of Supreme Court Reasoning and Result,* 35 S.C. L. Rev. 353 (1984). *See also State v. Williams,* 93 N.J. 39, 459 A.2d 641 (1983) (adopting seven factors and adding three more); *State v. Hunt,* 91 N.J. 338, 450 A.2d 952, 962–69 (1982) (Handler, J., concurring) (suggesting seven factors that would justify higher level of protection than analogous federal right); *State v. Gunwall,* 106 Wash.2d 54, 720 P.2d 808, 811–13 (1986).

In this case, we begin our analysis of Gannon's claim under the Delaware Constitution by examining the history of the right to confrontation in a Delaware criminal proceeding. Delaware enacted a Declaration of Rights and Fundamental Rules on September 11, 1776. Section 14 provided, *inter alia,* "that in all prosecutions for criminal offenses, every man hath a right ... to be confronted with the accusers or witnesses...." When the 1776 Constitution of the State of Delaware was adopted nine days later, it provided, *inter alia,* in Article 25, that *"the common law of England,* as well as so much of the statute law as have been heretofore adopted in practice in this state, shall remain in force, unless they shall be altered by a future law of the Legislature; *such parts only excepted as are repugnant to* the rights and privileges contained in this constitution and *the declaration of rights* ... agreed to by this convention." (emphasis added).

The common law of England had recognized spontaneous declarations as an exception to the common law right of confrontation since at least 1693. In an action for assault and battery upon the wife of the plaintiff, Lord Holt held that "what the wife said immediately upon the hurt received, and before that she had time to devise or contrive anything for her own advantage, might be given in evidence." 6 Wigmore, *Evidence* § 1747 (Chadbourn rev.1976) (*citing Thompson v. Trevanion,* Skinner 402 (1693)). Therefore, the cognizable common law hearsay exception for spontaneous declarations or excited utterances would be consistent with, *not* repugnant to, the right of confrontation in Delaware's 1776 Declaration of Rights and Fundamental Rules.

When Delaware adopted its 1792 Constitution, its text was not identical to Delaware's Constitution of 1776. The Delaware Constitution of 1792 also was not a mirror image of the United States Constitution that had been adopted just a few years earlier. *Claudio v.*

*State,* Del.Supr., 585 A.2d 1278, 1289 (1991). The Delaware Bill of Rights, in Article I of the Delaware Constitution of 1792, included many of the provisions that had been stated separately in the 1776 Declaration of Rights and Fundamental Rules. The right of confrontation, in particular, as set forth in Article I of the 1792 Delaware Constitution, was not only worded differently than the 1791 Sixth Amendment of the United States Constitution,[5] but it was also different than the analogous right in the 1776 Delaware Declaration of Rights and Fundamental Rules.

The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." Section 14 of the 1776 Delaware Declaration of Rights and Fundamental Rules provided the right "to be confronted with the accusers or witnesses." Article I, Section 7 in Delaware's 1792 Constitution, however, read that the accused had the right to "meet the witnesses in their examination face to face":

> *In all criminal prosecutions,* the accused hath a right to be heard by himself and his counsel, to be plainly and fully informed of the nature and cause of the accusation against him, to *meet the witnesses in their examination face to face,* to have compulsory process in due time, on application by himself, his friends or counsel, for obtaining witnesses in his favour, and a speedy and public trial by an impartial jury: He shall not be compelled to give evidence against himself; nor shall be deprived of life, liberty, or property, unless by the judgment of his peers, or *the law of the land.*

(emphasis added). In this case, we are not called upon to construe the meaning of "face to face". *See* Jennifer Friesen, *State Constitutional Law: Litigating Individual Rights, Claims and Defenses* § 12–12 (2d ed.1996 & Supp.1997).[6]

---

**5.** "When the Sixth Amendment was submitted for ratification in 1789, exceptions to the hearsay rule were narrowly restricted. Basically, the American common-law rule against hearsay was that extant in England during the same period. At that time, English courts admitted hearsay evidence only in very limited circumstances...." Graham C. Lilly, *An Introduction to the Law of*

*Evidence* § 7.29, at 359 (3d ed.1996) (footnotes omitted) (The Confrontation Clause: Historical Context).

**6.** For an interpretation of the phrase "face to face," *see Commonwealth v. Ludwig,* 527 Pa. 472, 594 A.2d 281 (1991). In 1995, the Pennsylvania Constitution was amended to replace the right to

The precise question presented in this case is whether the witness who was being met "face to face" by Gannon at trial could give testimony that included hearsay statements. The United States Supreme Court has noted that "the admissibility of hearsay statements raises concerns lying at the periphery of those that the Confrontation Clause is designed to address." *White v. Illinois,* 502 U.S. 346, 358, 112 S.Ct. 736, 744, 116 L.Ed.2d 848 (1992); *Coy v. Iowa,* 487 U.S. 1012, 1016, 108 S.Ct. 2798, 2800, 101 L.Ed.2d 857 (1988). In that regard, the words "law of the land" at the end of Article I, Section 7 of the 1792 Delaware Constitution are significant.

It is now well established that the phrase "nor shall be deprived of life, liberty, or property, unless by ... the *law of the land*" in Article I, Section 7 of the Delaware Constitution has substantially the same meaning as "nor be deprived of life, liberty, or property, without *due process of law*" in the Fifth Amendment of the United States Constitution. *Opinion of the Justices,* Del.Supr., 246 A.2d 90 (1968). The meaning of those phrases was explained by United States Supreme Court Justice Joseph Story:

> Lord Coke says, that [the words "by the law of the land"] mean by due process of law, that is, without due presentment or indictment, and being brought in to answer thereto by *due process of the common law.* So that this clause [i.e., the Due Process Clause of the Fifth Amendment] in effect *affirms the right of trial according to the process and proceedings of the common law.*

3 J. Story, *Commentaries on the Constitution of the United States,* § 1783 (1833) (citations omitted) (emphasis added).

Thus, when Article I, Section 7 of Delaware's 1792 Constitution is read *in pari materia,* it gave the accused the right "to meet the witnesses in their examination face to face" pursuant to the "law of the land," i.e., a trial in accordance with the contemporary common law rules of evidence. Because the "right to trial according to the process and proceedings of the common law" rules of evidence in 1792 had recognized the "excited

utterance" exception to the hearsay prohibition since 1693, it was part of the "law of the land" by which the witnesses would be examined "face to face." Article I, Section 7 of the current Delaware Constitution of 1897 still provides that "[i]n all criminal prosecutions, the accused hath a right ... to meet witnesses in their examination *face to face* ... nor shall he be deprived of life, liberty or property unless by the judgment of his peers or by the *law of the land.*"

 The "spontaneous declaration" exception to the hearsay rule was part of the evidentiary common "law of the land" when both that phrase and the right of "face to face" confrontation were simultaneously written into the Delaware Constitution of 1792. Therefore, we hold that the admission of a properly qualified excited utterance into evidence at trial does not violate the confrontation rights afforded to an accused in Delaware since 1792 by Article I, Section 7 of the current Delaware Constitution of 1897. Thus, Gannon's challenge under the Delaware Constitution is also without merit. *Compare McGriff v. State,* Del.Supr., 672 A.2d 1027, 1030 (1996).

### Conclusion

The judgments of the Superior Court are affirmed.

---

meet the witnesses "face to face" with the right to "confront" the witnesses. Pa.Const. art. I § 9.

*Compare Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).