Jamour PRESSEY, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 96, 2011.

Supreme Court of Delaware.

Submitted: July 20, 2011.
Decided: Aug. 2, 2011.

Peter W. Veith, Esquire, Wilmington, Delaware, for appellant.

Paul R. Wallace, Esquire and Elizabeth A. Powers, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before HOLLAND, BERGER and RIDGELY, Justices.

HOLLAND, Justice:

Following a jury trial in the Superior Court, the defendant-appellant, Jamour Pressey ("Pressey"), was convicted of Robbery in the First Degree and Resisting Arrest. In this direct appeal, Pressey contends that the trial judge abused her discretion in admitting a victim's prior out-of-court statement under the excited utterance exception to the hearsay rule. We have concluded that claim is without merit. Accordingly, the judgments of the Superior Court are affirmed.

### *Facts and Procedural History*

The crime at issue occurred when seventeen-year-old Anthony Calm ("Calm") was

walking to his house in Wilmington. When Calm was approximately one-half of a block away from his house, three men approached him. All three men were wearing black-and-white checkered scarves and pointing guns at Calm. The men robbed Calm of his cell phone, house key, school identification card, and cash. Two of the men then walked away. The third man stayed and robbed Calm of the coat, pants, and boots that he was wearing. That man then directed Calm to sit on a nearby step. Calm complied.

As soon as the third man was out of sight, Calm ran home. Because the men had stolen his house key, Calm began banging on the front door. After approximately two minutes, Calm's sister answered the door. Calm told his sister and mother that he had been robbed. Calm's mother, Kimberly Wallace, recalled that Calm was "scared," "hysterical," and "crying."

Wallace left the house in search of the perpetrators. After Wallace drove two blocks, she encountered Wilmington Police Detective Michael Ballard and Wilmington Police Officer Brian Vettori in their vehicle. Wallace "frantically" informed them of the robbery and then continued to drive in search of the robbers. Ballard and Vettori followed.

Wallace then observed a man walking down the street. Wallace exited her car and told Ballard and Vettori that the man was one of the robbers. Ballard, who was wearing a tactical vest, exited his vehicle and yelled, "Stop, police!" but the man fled. Ballard chased the man on foot, and Vettori followed in his car.

When the man stopped running, Vettori exited his vehicle and ordered the man to the ground at gunpoint. The man that Ballard and Vettori took into custody was Pressey. Vettori recalled that Pressey was wearing a black-and-white checkered scarf. Ballard and Vettori discovered several items on Pressey's person, including a cell phone, Calm's school identification card, and Calm's house key. When Vettori called Calm's cell phone number, the cell phone that was discovered on Pressey's person rang, with Vettori's number displayed on the caller ID.

Wallace returned to the house and then drove Calm to the scene of the arrest to identify the assailant. While Wallace was searching for the perpetrators, Calm put on a t-shirt and sweatpants because the robber had left him in only his boxers and socks. Calm testified that he was "in shock," "nervous," "upset," and "shaken up" at that time. Wallace also testified that Calm was "still shook up, scared."

When Wallace arrived with Calm to identify the robber, Calm stayed in the car and "put his hood on, slouched down where he couldn't be seen." Wallace recalled that Calm was "still crying" and appeared "scared." Both Wallace and Vettori testified that Calm identified Pressey as one of the robbers. The record reflects that the time from when Calm was robbed to the time that he identified Pressey was between twenty and sixty minutes.

Pressey was charged by indictment with Robbery in the First Degree, Conspiracy in the Second Degree, and Resisting Arrest. The State *nolle prossed* the Conspiracy in the Second Degree count. The matter then proceeded to a jury trial. Several witnesses testified at the trial, including Calm, Wallace, Ballard, and Vettori.

The jury found Pressey guilty of Robbery in the First Degree and Resisting Arrest. For the Robbery in the First Degree conviction, the trial judge sentenced Pressey to ten years at Level V, suspended after four years for Level IV and Level III probation. For the Resist-

ing Arrest conviction, the trial judge sentenced Pressey to one year at Level V, suspended for one year of Level III probation.

### Excited Utterance Rulings

During the prosecutor's direct examination of Wallace, defense counsel objected: "[T]hey are going to ask [Wallace] whether [Calm] identified Pressey as the person who robbed him.... I think that's clearly hearsay." The trial judge ruled from the bench as follows:

> Under ... Delaware [R]ule[ ] of [E]vidence 803, an excited utterance [is a] statement related to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
>
> The availability of the declarant is immaterial. Therefore, if the State can lay a foundation that this was indeed an excited utterance, whether or not the questions were asked of [Calm] is irrelevant. And if you can lay that foundation I am going to admit the statements as excited utterances.

Immediately thereafter, Wallace testified that Calm was "scared," "still crying," and "slouched down" and that he "didn't want to get out of the car" when he identified Pressey as one of the robbers. The trial judge ruled that the prosecutor had laid a sufficient foundation. Wallace then testified that Calm identified Pressey as one of the robbers.

During the prosecutor's direct examination of Vettori, defense counsel again objected for the same reason. The trial judge ruled: "You are going to have to lay the foundation again." Vettori testified that Calm "was seated in the back seat of the car," "appeared to be nervous," was "shaking," and "[h]is voice was shaky." The trial judge again ruled that the prosecutor had laid a sufficient foundation. Vettori then testified that Calm identified Pressey as one of the robbers.

■ Pressey argues that the trial judge abused her discretion in admitting Calm's prior out-of-court statement under the excited utterance exception to the hearsay rule. We review a trial judge's decision to admit evidence based on an exception to the hearsay rule for abuse of discretion.[1]

### Excited Utterance Exception

The Delaware Rules of Evidence provide that hearsay is generally inadmissible as evidence at trial.[2] However, the Delaware Rules of Evidence ("D.R.E.") also explicitly provide for many exceptions to that general rule.[3] One of those is the "excited utterance" exception, which provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule, even though the declarant is available as a witness.[4] This Court has held that the excited utterance exception is a "firmly rooted exception" to the hearsay rule.[5] We have explained that "[i]nherent in this exception is the notion that the declaration is reliable because the

---

1. *Purnell v. State*, 979 A.2d 1102, 1106 (Del. 2009); *Foster v. State*, 961 A.2d 526, 529–30 (Del.2008).

2. D.R.E. 802 ("Hearsay is not admissible except as provided by law or by these Rules.").

3. *See* D.R.E. 803, 804. *See also Dixon v. State*, 996 A.2d 1271, 1276–77 (Del.2010) ("These exceptions are defined by circum-

stances that are deemed to provide an indicia of trustworthiness to the statement.").

4. D.R.E. 803(2).

5. *Foster v. State*, 961 A.2d at 529–30 (quoting *Nalley v. State*, 2007 WL 2254539, at *2 (Del. Aug. 6, 2007)).

declarant, under the duress of excitement, is not in a position to fabricate and will exclaim the truth as he perceives it." [6]

In *Gannon v. State*,[7] we held that three foundational requirements must be satisfied to admit a statement under the excited utterance exception: "(1) the excitement of the declarant must have been precipitated by an event; (2) the statement being offered as evidence must have been made during the time period while the excitement of the event was continuing; and (3) the statement must be related to the startling event." [8] Pressey acknowledges that the prosecutor laid a proper foundation to satisfy the first and third requirements. Pressey argues that the prosecutor did not satisfy the second requirement because Calm's statement was not made during the time period while the excitement of the event was continuing. Pressey argues that "the act of Wallace forcing Calm to return to the scene was a superseding event that cause[d] Calm to be excited, not the prior robbery."

■ In *Culp v. State*,[9] we explained that although "the amount of time that has elapsed from the occurrence of the event or condition is a factor to consider in the analysis, it is not solely determinative." [10] We noted that "[i]t is generally recognized that the more time that has passed, the less likely it is the declarant was under the stress of excitement caused by the event." [11] We also observed, however, that "[w]here the declarant is continuously under the influence of the event, a statement made later in time from the event may be just as reliable as one made closer to the time of the event." [12]

In *Culp*, this Court compared D.R.E. 803(1) with D.R.E. 803(2) and pointed out that D.R.E. 803(1) contains an express contemporaneity requirement that must be satisfied for a statement to be admitted as a present sense impression.[13] We also noted that D.R.E. 803(2) does not mandate that a statement be made within a certain amount of time following the startling event to be admissible, but that the rule explicitly requires the declarant to be under the "stress of excitement" caused by the startling event or condition at the time of the statement's making.[14] Additionally

---

6. *Collins v. State*, 420 A.2d 170, 177 (Del. 1980).

7. *Gannon v. State*, 704 A.2d 272 (Del.1998).

8. *Id.* at 274. *See also Dixon v. State*, 996 A.2d at 1276; *Foster v. State*, 961 A.2d at 530; *Bruce v. State*, 781 A.2d 544, 552 (Del.2001); *Warren v. State*, 774 A.2d 246, 253 (Del.2001). This Court in *Gannon* noted that "[a] variety of factors have been considered by courts in determining whether the foundational requirements have been met to qualify the statement being offered into evidence as an excited utterance." *Gannon v. State*, 704 A.2d at 274.

9. *Culp v. State*, 766 A.2d 486 (Del.2001).

10. *Id.* at 490.

11. *Id.* at 490 n. 5. *See also Collins v. State*, 420 A.2d at 177 ("Implicit in the rule is a requirement that the statement be contemporaneous or nearly contemporaneous with the event described so that there is no time to fabricate the statement.").

12. *Culp v. State*, 766 A.2d at 490 n. 5. "The amount of time that has elapsed between the making of the statement and the startling event is an important, but not dispositive consideration, in determining whether the declarant was in an excited state when the statement was made." *Id.* at 490.

13. D.R.E. 803(1) ("The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ... A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.").

14. *Culp v. State*, 766 A.2d at 490.

we stated "[i]t is the making of the statement under these circumstances that furnishes the underlying reliability of a statement admitted pursuant to Rule 803(2)." [15]

In *Culp*, we held that a D.R.E. 803(2) analysis must focus on the condition of the declarant at the time the statement was made and includes a careful consideration of all the factors present.[16] We recently reiterated those principles in *Dixon v. State*,[17] and we have applied those principles in several other cases.[18] For example, we held in *Evans v. State*[19] that the trial judge correctly admitted two out-of-court statements of a gunshot victim under the excited utterance exception, even though the statements occurred approximately four and nine hours later, because the declarant made those statements while under the stress of excitement caused by the event.[20]

### Evidence Properly Admitted

■ In this case, Wallace testified that Calm was "scared," "still crying," and "slouched down" and that he "didn't want to get out of the car" when he identified Pressey as one of the robbers. Vettori testified that Calm "was seated in the back seat of the car," "appeared to be nervous," was "shaking," and "[h]is voice was shaky." The record reflects that Calm's identification of Pressey as one of the robbers satisfied all three of the foundational requirements to qualify as an "excited utterance" under D.R.E. 803(2). The record does not establish that "the act of Wallace forcing Calm to return to the scene was a superseding event that cause[d] Calm to be excited, not the prior robbery." Accordingly, Pressey has not shown that the trial judge abused her discretion in admitting Calm's statement into evidence under the excited utterance exception to the hearsay rule.

### Conclusion

The judgments of the Superior Court are affirmed.

---

15. *Id. See also Littlejohn v. State*, 219 A.2d 155, 157 (Del.1966) ("[T]he test applied is one of spontaneity; that is, was or was not the statement induced by the shock of the event.") (internal citations omitted).

16. *Culp v. State*, 766 A.2d at 490–91. We explained that "[o]ther factors that may be pertinent to the analysis are the nature of the startling event, whether the statement was made in response to questioning, the nature of the declarant, and whether the statement is self-serving." *Id.* at 491 n. 7.

17. *Dixon v. State*, 996 A.2d 1271, 1276 (Del. 2010) ("[T]he declarant must simply be 'under the stress of excitement caused by the startling event or condition at the time of the statement's making.' ").

18. *See e.g., id.* at 1276–77 (holding that 911 call made fifteen minutes after startling event—a shooting—was made under stress of excitement); *Warren v. State*, 774 A.2d at 253 (holding that 911 call to describe events that occurred over one hour before call was admissible under excited utterance exception to hearsay rule); *Collins v. State*, 420 A.2d at 177 (holding that even though victim was "dazed and bleeding," apparent calm with which he spoke and passage of time excluded "statement from excited utterance exception to hearsay rule.").

19. *Evans v. State*, 2004 WL 1790191 (Del. Aug. 3, 2004).

20. *Id.* at *2.