Catherine W. CULP, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 13, 2000.

Supreme Court of Delaware.

Submitted: Jan. 17, 2001.
Decided: Feb. 21, 2001.

Paul S. Swierzbinski, Esquire, Assistant Public Defender, Office of the Public Defender, Dover, Delaware, for Appellant.

John Williams, Esquire, Deputy Attorney General, Department of Justice, Dover, Delaware, for Appellee.

Before WALSH, HOLLAND, and STEELE, Justices.

WALSH, Justice:

In this appeal from the Superior Court, we examine whether the trial court erred in refusing to permit the introduction into evidence of certain statements made by the defendant that were recorded on a 911 tape. We conclude that the proffered testimony satisfies the excited utterance exception to the hearsay rule under Delaware Rule of Evidence 803(2). Because the disputed evidence was supportive of the defendant's claim of accident, its exclusion was reversible error.

I

On July 28, 1999, the victim, Lee B. Hicks ("Hicks"), attended a family barbeque with his girlfriend, Catherine Culp ("Culp"), the Appellant/defendant-below. Hicks, who resided in Florida but maintained a home in Felton, Delaware, organized the gathering so that he could visit with family and friends during his stay in Delaware. The barbeque was held at the home of Hicks' daughter.

During the party, Hicks continuously dropped his wallet. At the suggestion of Hicks' daughter and his niece, Culp took possession of the wallet for Hicks. Thereafter, Hicks and Culp began to argue because Culp allegedly indicated she wanted to have sex with Hicks' grandson. Hicks was angered by this comment and told Culp he was going to take her back to Florida and "did not want anything else to do with her." It appears that Hicks and Culp kept their distance from each other following this incident.

As the party concluded during the early evening hours, Hicks suggested everyone return to his home on Plymouth Road in Felton. Thereafter, many of those who attended the barbeque returned to Hicks' residence. Upon returning to his residence, Hicks realized he did not have his wallet and was informed that Culp was holding it. Hicks asked Culp to return his wallet, but she refused. An argument ensued, and after repeated requests, Culp returned the wallet. No other incidents between Culp and Hicks took place. All the guests in attendance departed shortly after 12:00 a.m. Culp and Hicks remained at his residence.

At approximately 1:00 a.m., Kimberly and Corinthian Cuffee, who lived a few doors away from the Hicks residence, were awakened by Culp, who was frantically banging on the door and ringing the doorbell. When Mr. Cuffee opened the door Culp stated, "I need help ... he is hurt, I need somebody to come call 911."[1] Mrs. Cuffee described Culp's condition at this point as "hysterical." Culp entered the Cuffee residence and Mr. Cuffee dialed 911. Culp and Mrs. Cuffee also spoke to the 911 dispatcher. The 911 dispatcher requested that Mr. Cuffee give the phone to Culp. When the dispatcher asked what happened, Culp stated, "He told me to give him his gun, and I gave it to him. And the gun went off and it shot him in the back." The dispatcher responded, "You shot him in the back?" Culp replied "He's bleeding. Oh, God, Please."

Trooper Robert Daddio arrived at the Cuffee residence at 1:36 a.m. As Trooper Daddio was entering the Cuffee's driveway, Culp ran toward him frantically pointing toward the Hicks residence and yelling "over there, over there." Trooper Daddio described Culp as "very hysterical" and agreed that Culp appeared excited when he arrived. Trooper Daddio proceeded to the Hicks residence where he

was met by Culp, who had run down the street. She stated that "he is in there, he is dead."

Troopers Daddio and Lane, who arrived shortly after Daddio, entered the Hicks residence along with Culp. Culp directed the officers to the bedroom where Hicks was located. The officers determined that Hicks was dead. Trooper Harlan Blades, III arrived thereafter and found a revolver at the foot of the bed where Hicks was lying. Trooper Blades, a former paramedic, testified that after examining Hicks he determined that Hicks "had not been dead long ... to me it was obvious that this had just occurred." It was later determined that Hicks' death was caused by a single, close range, gunshot wound.[2]

Culp returned to the Cuffee residence and remained there while the officers conducted their investigation. Culp was "ranting and raving" at this time and fell on the floor on more than one occasion. Culp was lying on the floor at various times, and went in and out of consciousness. During this time Mrs. Cuffee indicated that Culp said: "It was an accident, it was an accident. I grabbed a towel and I tried to stop the bleeding, but it wouldn't stop, you know, he wouldn't stop bleeding." Mrs. Cuffee reported that Culp gave conflicting accounts about the cause of the shooting. According to Mrs. Cuffee, Culp first stated "He asked me for the gun, I handed him the gun, he laid it on the bed or something, I turned the light out and he rolled over and it went off." Mrs. Cuffee testified that Culp later told her that she "handed him the gun, he put it on the dresser, and then I left the room."

Lieutenant Joseph Huttie arrived at the Cuffee residence at approximately 1:44 a.m. After Mrs. Cuffee woke Culp, Lt. Huttie asked Culp what happened. Culp responded that "Mr. Hicks had asked her to retrieve a handgun from on top of the

---

1. Culp went to the Cuffee residence seeking assistance because Hicks' home did not have a telephone.

2. There is no evidence in the record indicating Hicks' exact time of death.

bureau ...," she gave the weapon to Hicks, "turned off the light, closed the door, and the gun accidentally went off." Culp told Lt. Huttie she was asked to retrieve the gun "for the purpose of protecting the children from it, because the kids earlier in the day had been playing with that handgun." Huttie stated that Culp said "after the shooting, she went back in the room, saw that he was bleeding ... took the gun off the bed, put it on the floor, and then tended to his injury." At approximately 2:20 a.m., Trooper Blades spoke with Culp at the Cuffee residence. Trooper Blades described Culp's condition at this point as "very upset." Blades asked Culp if she was okay and she responded that "it was an accident. I shot him, but it was an accident." Culp was then taken to Delaware State Police Troop 3, where tests were conducted. At this point, she was considered a suspect.

Culp was indicted on charges of First Degree Murder and Possession of a Firearm During the Commission of a Felony. At trial, Culp sought to introduce the tape of the 911 call made from the Cuffee residence on the morning of July 29, 1998. Culp argued the statements she made on the 911 tape were relevant to show the generalized consistency of her statements and to rebut the State's evidence suggesting that her statements to various witnesses were inconsistent. The State countered that the statements made on the 911 tape constituted inadmissible hearsay not within any recognized exception. The Superior Court agreed and excluded the 911 tape, ruling the statements did not fall within the present sense impression and excited utterance exceptions to the hearsay rule and that, in any event, the statements were cumulative.

## II

■ Culp contends the Superior Court improperly excluded the statements she made on the 911 tape. Specifically, Culp argues these statements qualify as either a present sense impression or an excited

utterance. The State counters that the statements do not qualify as a present sense impression because they were not made while Culp was perceiving an event or immediately thereafter. Furthermore, the state asserts the statements are not excited utterances within the meaning of the rule since they were made at an indeterminate time after the shooting.

■ This Court reviews the Superior Court's determination to admit or exclude evidence under an abuse of discretion standard. See Williamson v. State, Del.Supr., 707 A.2d 350, 354 (1998). "An abuse of discretion occurs when 'a court has ... exceeded the bounds of reason in view of the circumstances,' [or] ... so ignored recognized rules of law or practice ... to produce injustice." Lilly v. State, Del. Supr., 649 A.2d 1055, 1059 (1994)(quoting Firestone Tire & Rubber Co. v. Adams, Del.Supr., 541 A.2d 567, 571 (1988)). This Court will reverse a lower court's evidentiary decision only if there was a clear abuse of discretion. See Robinson v. State, Del.Supr., 600 A.2d 356, 360 (1991).

Admittedly, the statements made by Culp on the 911 tape recording constitute hearsay. See D.R.E. 801(c). Hearsay statements are generally not admissible unless the statement falls within a recognized exception to the hearsay rule. See D.R.E. 802 ("Hearsay is not admissible except as provided by law or by these Rules."). Explicitly excluded from the prohibition of the hearsay rule are statements that qualify as excited utterances under Rule 803(2). An excited utterance is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." D.R.E. 803(2).

■ To be admissible under Rule 803(2), a statement must satisfy the following three requirements: "(1) the excitement of the declarant must have been precipitated by an event; (2) the statement being offered as evidence must have been

made during the time period while the excitement of the event was continuing; and (3) the statement must be related to the startling event." *Gannon v. State*, Del.Supr., 704 A.2d 272, 274 (1998).[3] The declarant must also have personally perceived the startling event for a statement to be admissible under this exception. *See e.g., United States v. Mitchell*, 3rd Cir., 145 F.3d 572, 576 (1998). Statements qualifying as excited utterances are deemed reliable because the person making the statement under these conditions "is not in a position to fabricate and will exclaim the truth." *Collins v. State*, Del. Supr., 420 A.2d 170, 177 (1980); *see also Miller v. Keating*, 3rd Cir., 754 F.2d 507, 512 (1985)(stating that, under the analogous federal rule, "[t]he assumption underlying the hearsay exception of Rule 803(2) is that a person under the sway of excitement temporarily loses the capacity of reflection and thus produces statements free of fabrication").

In the present case, the first and third factors under *Gannon* are plainly satisfied because the statements were precipitated by an event and the statements related to that event. The dispute centers on whether the statements were made "while the excitement of the event was continuing." The State argues that the statements do not qualify because they were made at an undetermined time after the event to which they relate. The Superior Court

agreed, opining that too much time elapsed between the time of the event and the making of the statements to satisfy the excited utterance exception to the hearsay rule.[4] While the amount of time that has elapsed from the occurrence of the event or condition is a factor to consider in the analysis,[5] it is not solely determinative. *See United States v. Iron Shell*, 8th Cir., 633 F.2d 77, 85–86 (1980).

Rule 803(2) does not mandate that a statement be made within a certain amount of time following the startling event to be admissible.[6] Indeed, the rule explicitly requires the declarant to be under the "stress of excitement" caused by the startling event or condition at the time of the statement's making. It is the making of the statement under these circumstances that furnishes the underlying reliability of a statement admitted pursuant to Rule 803(2). *See* 2 McCormick On Evidence § 272 (5th ed. 1999)("[T]he ultimate question is whether the statement was the result of reflective thought or whether it was rather a spontaneous reaction to the exciting event."). The amount of time that has elapsed between the making of the statement and the startling event is an important, but not dispositive consideration, in determining whether the declarant was in an excited state when the statement was made. Therefore, the analysis must focus on the condition of the

---

3. In *Gannon*, a witness testified to statements made to him over the telephone by his 12 year old daughter approximately 10–15 minutes after she had heard an intruder in the residence. The witness testified that his daughter, who was home alone at the time, told him that she had heard the dog barking and someone walking up the stairs and that when she called out for her mother, the person descended the stairs. After waiting in her room for a time, she went down to investigate and discovered the sliding glass door ajar. The witness testified "that his daughter seemed frightened when she was speaking to him over the telephone." We held the statements made by the daughter qualified as excited utterances. *Gannon*, 704 A.2d at 274.

4. The amount of time that passed between the gun discharging and the making of the statements is not clear from the evidence presented at trial.

5. It is generally recognized that the more time that has passed, the less likely it is the declarant was under the stress of excitement caused by the event. Where the declarant is continuously under the influence of the event, however, a statement made later in time from the event may be just as reliable as one made closer to the time of the event. *See* 2 McCormick On Evidence § 272 (5th ed.1999).

6. Compare Rule 803(1), which contains an express contemporaneity requirement that must be satisfied for a statement to be admitted as a present sense impression.

declarant at the time the statement was made. When conducting this analysis, a court must carefully consider all the factors present.[7]

In the present case, it is unclear exactly how much time elapsed from the moment the shooting occurred to the time Culp's statements were recorded. The testimony of Mr. and Mrs. Cuffee, as well as the transcript of the 911 tape itself, however, clearly demonstrate that Culp was under the "stress of excitement" caused by Hicks' shooting before, and for quite sometime after, she made the statements in issue. When Culp arrived at the Cuffee residence, Mrs. Cuffee described Culp as "hysterical." Culp's statements to the 911 dispatcher were frantic and non responsive. Moreover, Culp's statement to the 911 dispatcher that "He's bleeding" strongly imparts contemporaneity as to the events she witnessed. Furthermore, when Trooper Daddio arrived at the Cuffee residence, shortly after the 911 call was made, he encountered Culp in the driveway and stated that she was "very hysterical." Trooper Daddio also agreed that Culp appeared excited. Finally, when Trooper Blades evaluated Hicks' condition he determined that Hicks' had not been dead long.

It is evident that Culp was under the influence of the startling event when she spoke to the 911 dispatcher. In light of the circumstances of this case, we conclude the statements in issue qualify as excited utterances. While we understand the trial court's concern regarding the amount of time that passed between the startling event and the statements made to the 911 dispatcher, we believe the evidence clearly demonstrates that the declarant was under the stress of the excitement of the event at the time of the statements making.

 The exclusion of this evidence cannot be considered harmless error. *See*

*Van Arsdall v. State*, Del.Supr., 524 A.2d 3, 13 (1987)(holding that it was not harmless error beyond a reasonable doubt where trial court violated defendant's right under State confrontation clause by preventing defendant from cross examining witness on issue of bias). It is important to note that Culp was the only eye witness to the manner in which Hicks died and the State's case–in–chief was directed, in part, to attacking her credibility. To preclude a defendant from offering critical corroborative evidence under these circumstances constitutes a clear abuse of discretion. Because we cannot say with confidence that the refusal to admit such evidence did not influence the jury's verdict, we must grant the defendant an opportunity to present the excluded evidence through a new trial. *See Webb v. State*, Del.Supr., 663 A.2d 452, 461 (1995)(holding trial judge's exclusion of impeachment evidence to be an abuse of discretion and finding error was not harmless because of the prejudice suffered by defendant from being precluded to cast doubt on witness' damaging testimony).

In view of our decision that it was reversible error for the trial court to exclude this evidence, it is unnecessary to address Culp's remaining contentions that the evidence offered at trial was insufficient to support a conviction for intentional killing.

### III

For the foregoing reasons, the judgment of the Superior Court is REVERSED and the matter REMANDED for further proceedings consistent with this decision.

---

**7.** Other factors that may be pertinent to the analysis are the nature of the startling event, whether the statement was made in response to questioning, the nature of the declarant, and whether the statement is self-serving. See Saltzburg, et al., 3 Federal Rules of Evidence Manual 1653–54 (7th ed.1998) and cases cited therein.