# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BARBARA J. OGG, as Surviving Spouse and as Administratrix of THE ESTATE OF CHARLES OGG, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No.  N15C-07-160 ASB |
| THE FORD MOTOR COMPANY, ET. AL, | ) ) ) | |
| Defendants. | ) | |

## SUPPLEMENTAL ORDER[1]

Submitted: June 2, 2020
Decided: July 1, 2020

*Upon Consideration of Defendants' Joint Submission
Requesting Affidavits Be Deemed Inadmissible,*
**DENIED.**

Raeann Warner, Esquire of Jacobs & Crumplar, P.A., Wilmington, Delaware. *Attorneys for Plaintiffs*.

Loreto P. Rufo, Esquire, Wilmington, Delaware.  *Defense Coordinating Counsel*.

**MEDINILLA, J.**

---

[1] Considering admissibility only as presented in Defendants' Joint Submission in Support of Summary Judgment Pertaining to the Issue of Admissibility of the Affidavits of Charles Ogg Dated July 16, 2014 and October 8, 2014.

1

# I.    INTRODUCTION

Plaintiffs, Barbara Ogg, as surviving spouse and as Administratrix of the Estate of Charles Ogg (Plaintiffs) assert claims against Defendants alleging that Charles Ogg ("Mr. Ogg") suffered severe asbestosis from his exposure to asbestos and asbestos-containing products.  Remaining Defendants moved this Court for summary judgment of all claims.  During oral arguments on November 21, 2019, the focus shifted to the issue of the admissibility of affidavits executed by Mr. Ogg in the months and days before his death.  A hearsay objection was raised in one of Defendant's Reply to Plaintiffs' Opposition for Summary Judgment.  Since Plaintiffs requested time to respond and all Defendants indicated intent to file this joint submission on the issue of the admissibility of the affidavits, the Court agreed that additional briefing was appropriate.[2]  Upon consideration of the arguments, proffers of evidence as set forth by parties, and the record in this case, the Court hereby finds the affidavits are admissible as residual exceptions to the hearsay rule under Delaware Rules of Evidence (D.R.E.) 807.

---

[2] On January 27, 2020, Plaintiffs submitted a Sur-Reply in Opposition to Defendants' Summary Judgment Argument Pertaining to Issues Regarding the Admissibility of Mr. Ogg's Affidavits.  On March 16, 2020, Defendants submitted a Joint Submission in Support of Summary Judgment pertaining to the Issue of Admissibility of Mr. Ogg's Affidavits.  Because of the timing of the filing of these supplemental pleadings and briefing that concluded immediately before the COVID-19 pandemic, the Court received notice from Defense Coordinating Counsel in April 2020 that all submissions had been filed.  On May 28, 2020, in response to a follow-up from the Court, the parties requested time to confer before the Court issued its ruling.  On June 2, 2020, the parties confirmed via e-mail they required a decision.

## II. FACTUAL BACKGROUND[3]

Mr. Ogg died on October 19, 2014. Three months prior, he executed his first affidavit on July 16, 2014 wherein he provided sworn statements regarding his work history and potential exposure to asbestos-containing products.[4] The next day, he presented to his pulmonologist's office with increased medical issues, required hospitalization for severe end stage pulmonary fibrosis, and was discharged one week later on July 24, 2014.

He required medical treatment one month later at an intensive care unit, where he and his family received his prognosis and treatment options for his terminal disease. In early September of 2014, Mr. Ogg agreed to a "Do Not Resuscitate" status. Upon discharge from the hospital on September 4, 2014, Mr. Ogg's diagnosis was end-stage advanced idiopathic pulmonary fibrosis with poor prognosis for long-term survival. Hospice care was determined appropriate and Mr. Ogg went home.

Eleven days before his death, on October 8, 2014, Mr. Ogg executed his second affidavit.[5] His pre-suit deposition regarding past asbestos exposure and disease was scheduled for October 21, 2014. The deposition did not take place because he died two days prior on October 19, 2014.

---

[3] The Court only highlights the relevant factual history pertaining to the admissibility of Mr. Ogg's July 16, 2014 and October 8, 2014 affidavits.

[4] Plaintiffs' Sur-Reply in Opposition to Defendants' Motion for Summary Judgment, Exhibit 1 at pages 1-2 [hereinafter "July Affidavit."].

[5] Plaintiffs' Sur-Reply in Opposition to Defendants' Motion for Summary Judgment, Exhibit 1 at pages 3-7 [hereinafter "Oct. Affidavit."].

The parties seek a determination of the admissibility of the two affidavits under D.R.E. 804(b)(2) and 807.

## III.    PARTY CONTENTIONS

Plaintiffs intend to admit Mr. Ogg's affidavits to establish product identification, and in support of their experts' opinions on causation. Plaintiffs argue the affidavits are admissible (1) as dying declarations under D.R.E. 804(b)(2); (2) under the residual hearsay exception pursuant to D.R.E. 807; or (3) in the alternative, admissible for expert reliance in issuing expert testimony under D.R.E. 703.[6] Defendants argue that affidavits are inadmissible (1) as dying declarations because a there was a "significant lapse of time" between execution of both affidavits and Mr. Ogg's death; (2) as hearsay under the residual hearsay exception because trustworthiness of the documents is not guaranteed and where admission is not in the interest of justice.

## IV.    DISCUSSION

An out-of-court written or verbal statement by someone other than the declarant testifying offered in evidence to prove the truth of the matter asserted qualifies as hearsay.[7] "Hearsay is generally inadmissible unless the statement is

---

[6] Defendants did not address admissibility under D.R.E. 703 where the submissions requested by the Court were limited to considerations under D.R.E. Rules 804(b)(2) and 807.

[7] D.R.E. 801(a), (c).

4

privy to a recognized exception to the hearsay rule."[8]  The Court considers the two hearsay exceptions under D.R.E. 804(b)(2) and 807.

### A.  Affidavits Not Admissible as Dying Declarations

Under D.R.E. 804(b)(2), a "[s]tatement under belief of impending death," also known as a "dying declaration," is considered an exception to the hearsay rule.[9] Specifically, a "dying declaration" is "not excluded by the hearsay rule if the declarant is unavailable as a witness[.]"[10]  A witness is certainly unavailable if "unable to be present or to testify at the hearing because of death."[11]  Although Mr. Ogg is indeed unavailable, more is required to satisfy this exception.

For an affidavit to be admissible as a "dying declaration" under D.R.E. 804(b)(2), "the party proffering the hearsay statement must establish that death was 'imminent' at the time the statement was made, and that the statement concerned the cause or circumstances of the declarant's death."[12]  To determine whether a statement was made "under a sense of impending death," courts look to declarant's

---

[8] *State v. Davenport*, 2015 WL 994837, at *2 (Del. Super. Ct. Mar. 4, 2015) (citing D.R.E. 802, 803, 804; *Culp v. State*, 766 A,2d 486, 489 (Del. 2001)).
[9] D.R.E. 804(b)(2).
[10] *Id.*
[11] *State v. Johnson*, 2001 WL 428685, at *4 (Del. Super. Ct. Apr. 19, 2001) (quoting D.R.E. 804(a)(4)).
[12] *Stigliano v. Anchor Packing Co.*, 2006 WL 3026168, at *1 (Del. Super. Ct. Oct. 18, 2006) (citing D.R.E. 804(b)(2)). *See Johnson*, 2001 WL 428685, at *4 (citing *Mattox v. United States*, 146 U.S. 140, 151 (1892); *State v. Van Winkle*, Del. Oyer & Term., 86 A. 310, 311 (1913)) ("A party who attempts to offer a 'statement made under belief of impending death' into evidence must establish that the statement was made under a sense of impending death.").

state of mind during a time when the declarant must have felt or known that he would not survive.[13]

The Court is guided by similar considerations in *Stigliano v. Anchor Packing Co.* ("*Stigliano*"). There, an affidavit executed 73 days before declarant's death was determined inadmissible as a "dying declaration."[14] The time-gap was an indication that "[d]eath was not . . . imminent at the time the affidavit was made."[15] Similarly, in *Collins v. Ashland Inc.*, the affidavit was inadmissible as a "dying declaration" because the statements issued "were not made under the sense of impending death"[16] where a period of 149 days had lapsed between the execution of the decedent's affidavit and his death.[17] Here, neither affidavit satisfies the exception requirements under 804(b)(2).

The first affidavit was executed 95 days before Mr. Ogg's death;[18] the second,

---

[13] *Johnson*, 2001 WL 428685, at *4 (citing MᴄLᴀᴜɢʜʟɪɴ, Wᴇɪɴsᴛᴇɪɴ ᴀɴᴅ Bᴇʀɢᴇʀ, Wᴇɪɴsᴛᴇɪɴ's Fᴇᴅᴇʀᴀʟ Eᴠɪᴅᴇɴᴄᴇ § 804.05[3] (2d ed. 2000)). *See Shepard v. United States*, 290 U.S. 96, 99–100 (1933) ("[T]he declarant must have spoken without hope of recovery and in the shadow of impending death . . . . Fear or even belief that illness will end in death will not avail itself to make a dying declaration. There must be 'a settled hopeless expectation' that death is near at hand, and what is said must have been spoken in the hush of its impending presence . . . . What is decisive is the state of mind. Even so, the state of mind must be exhibited in the evidence, and not left to conjecture. The patient must have spoken with the consciousness of a swift and certain doom.").
[14] *Stigliano*, 2006 WL 3026168, at *1 (citing D.R.E. 804(b)(2)).
[15] *Id.*
[16] *Collins v. Ashland, Inc.*, 2008 WL 3321848, at *2 (Del. Super. Ct. Aug. 12, 2008) (citing D.R.E. 804(b)(2): "[a] statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be the declarant's impending death.")).
[17] *Id.* (citing *Stigliano*, 2006 WL 3026168, at *1 (finding that a hearsay statement made seventy-three days before the declarant's death lacked imminence)).
[18] July Affidavit.

6

11 days prior.[19]  The July Affidavit was not executed "under a sense of impending death" as required under 804(b)(2).[20]  Although the October Affidavit certainly came closer to his final days, the record reflects that Mr. Ogg and his counsel contemplated he would have time to provide additional statements at his deposition on October 21. These would not be his final words.  Therefore, as in *Stigliano* and *Collins*, this Court finds that the lapse in time between Mr. Ogg's death and the execution of the affidavit "precludes a finding of imminence needed to satisfy the dying declaration exception."[21]  Therefore, neither affidavit is admissible as a dying declaration under D.R.E. 804(b)(2).

### B. Affidavits Admissible as Residual Exceptions to The Hearsay Rule

A hearsay statement, not admissible under D.R.E. 803 or 804, can be considered under the residual hearsay exception as a statement,

> having equivalent circumstantial guarantees of trustworthiness . . . if the court determines that: (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.[22]

---

[19] October Affidavit.
[20] *Johnson*, 2001 WL 428685, at *4 (citing MCLAUGHLIN, WEINSTEIN AND BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 804.05[3] (2d ed. 2000)).  *See Shepard*, 290 U.S. at 99–100.
[21] *Collins*, 2008 WL 3321848, at *2 (citing *Stigliano*, 2006 WL 3026168, at *1).
[22] *Holloman v. Metzger*, No. 17-79, slip op. at 10 (D. Del. Mar. 23, 2020); *see Purnell v. State*, 979 A.2d 1102, 1107 (Del. 2009).

The "residual exception" to the hearsay rule must be "construed narrowly so that the exception does not swallow the hearsay rule."[23]  For a hearsay statement to be held as admissible under this exception, "[t]he Court must be satisfied that there is a guaranty of trustworthiness associated with the proffered hearsay statement that is equivalent to the guaranties of trustworthiness recognized and implicit in the other hearsay exceptions."[24]

First, the affidavits are offered as evidence of material facts, and critical to Plaintiffs' claims on the issue of product identification that also support the Plaintiffs' experts on their causation opinions.  Second, the Court finds that the affidavits are "more probative on the point for which [they are] offered than any other evidence which the proponent can procure through reasonable efforts[.]"[25]  Mr. Ogg's statements recount in great detail where and when he potentially worked with Defendants' products.  Defendants' argument that the more probative evidence is from the testimony of the independent witnesses expected to confirm some of what is found in Mr. Ogg's affidavits is unavailing.  Though co-workers and family members can corroborate statements from the affidavits, such testimony speaks to the reliability and trustworthiness of the affidavits – not their probative value.  The most probative value comes from Mr. Ogg's own account of work history and

---

[23] *Stigliano*, 2006 WL 3026168, at *1 (quoting *Cabrera v. State*, 840 A.2d 1256, 1268 (Del. 2004)).
[24] *Id.* (citing *Odaho v. Wright*, 110 S.Ct. 3139, 3147 (1990)); *see Purnell*, 979 A.2d at 1107.
[25] *Holloman*, No. 17-79, slip op. at 10.

exposure.

This Court is satisfied that, unlike *Stigliano* that found the affidavit lacked the required trustworthiness under D.R.E. 807, here there is a guaranty of trustworthiness associated with the proffered hearsay statements equivalent to those implicit in the other hearsay exceptions. In *Stigliano* what proved fatal to the admissibility of the affidavit was that the affiant, previously deposed four times prior to executing the affidavit at issue, had "not once . . . recount[ed] exposure to [defendant's] products," as mentioned in the affidavit.[26] The *Stigliano* Court found that "given the substantial deposition record on the product nexus issue[,]" it could not conclude that the post-deposition affidavit was "more probative on the [product nexus] point for which it [was] offered than any other evidence" on that record.[27] Unlike the deposition record of the deceased affiant in *Stigliano*, here there is no post-deposition record nor any evidence of contrary statements made by Mr. Ogg.

Third, the Court finds that the "general purposes of [the hearsay] rules and the interests of justice will best be served by admission of the statements into evidence."[28] Although Defendants argue they cannot challenge the credibility of his accounts, the question before this Court is as to the admissibility—not the credibility—of the affidavits. The jury decides issues related to

---

[26] *Stigliano*, 2006 WL 3026168, at *1.
[27] *Id.* (quoting D.R.E. 807(b)).
[28] *Holloman*, No. 17-79, slip op. at 10.

9

witness credibility and resolves conflicts in testimony, if any.[29] Thus, Defendants will have the opportunity to present impeachment evidence to undermine Mr. Ogg's statements or accounts—through the testimony of corporate representatives and the cross-examination of Mr. Ogg's co-workers and family, expected to corroborate his statements. Defendants can argue what weight they believe the jury should afford Mr. Ogg's affidavits and why.[30] Both affidavits are sufficiently trustworthy for purposes of admissibility under D.R.E. 807. For these reasons, both affidavits are admissible as "residual exceptions" to the hearsay rule.

---

[29] *See Poon v. State*, 880 A.2d 236, 238 (Del. 2005) (internal citations omitted) ("[I]t is the sole province of the fact finder to determine witness credibility, resolve conflicts in testimony and draw any inferences from the proven facts.").

[30] *State v. Dixon*, 2011 WL 7404275, at *6 (Del. Super. Ct. Dec. 6, 2011) ("It is the jury's obligation to listen to all of the evidence, to weigh credibility, and then make a decision, if possible, as to what took place.").

## V. CONCLUSION

For the foregoing reasons, Mr. Ogg's affidavits are: (1) inadmissible under D.R.E. 804(b)(2) as "dying declarations;" (2) admissible under D.R.E. 807(a) as "residual exceptions" to the hearsay rule; and (3) not considered under D.R.E. 703.[31] Counsel must notify the Court if the parties wish to schedule any remaining issues on Defendants' Motions for Summary Judgment.

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

oc: Prothonotary

---

[31] Plaintiffs' alternative request under D.R.E. 703 that provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed" is outside of the submissions requested by the Court and not necessary in light of this ruling.