# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NOAH STEWART, | ) | |
| | ) | |
| Defendant Below, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **I.D. No.: 2206011965** |
| | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff Below, | ) | |
| Appellee. | ) | |

*SUBMITTED: May 24, 2024*
*DECIDED: June 5, 2024*

## ORDER AND OPINION
*On Defendant's Appeal from the Court of Common Pleas - **AFFIRMED.***

*Bridget A. Fassano (Rule 55), Deputy Attorney General,* Delaware Department of Justice, 820 N. French Street, 7th Floor, Wilmington, Delaware 19801. Attorney for the State of Delaware.

*Samantha Lukoff, Esquire,* Office of Public Defender, 900 N. King Street, Wilmington, Delaware 19801. Attorney for Noah Stewart.

**Jones, J.**

On August 17, 2019, following a nonjury trial in the Court of Common Pleas, Noah Stewart ("Stewart" or "Defendant") was found guilty of: (1) Driving a Vehicle Under the Influence of Alcohol ("DVUIA"); (2) Leaving the Scene of a Collision Resulting in Injury ("LSCRI"); and (3) Failure to Report a Collision ("FRC").[1] On September 8, 2023, the Defendant was sentenced to Level V for 12 months, suspended for probation at Level II for 12 months, a fine of $500.00, completion of a DUI course, and a substance abuse evaluation followed by any recommended treatment.[2] On January 5, 2024, the Defendant filed a timely appeal to this Court.[3]

## STATEMENT OF FACTS

On June 22, 2022, Middletown Police responded to a vehicle collision which occurred at the intersection of Middletown Warwick Road and West Main Street in New Castle County, Delaware.[4]

Corporal Brian McKinery ("Cpl. McKinery") proceeded to drive around the outlying area of the crash scene based on other dispatches simultaneously coming through the CAD system, including a complaint from inside Bob Evans Restaurant as well as a complaint from the Hampton Inn close to the intersection where the collision occurred.[5] Cpl. McKinery responded to the Hampton Inn based on simultaneous dispatches detailing the suspect's description and path of travel from

---

[1] *See* Appendix for Case No. 2206011965, A - 0004 (2024).
[2] DE-08, 1-2.
[3] DE-08.
[4] DE-11, 6.
[5] DE-08, 4.

the car to the Bob Evans Restaurant, through a retention pond, and to the Hampton Inn.[6]

At the Hampton Inn, Cpl. McKinery observed the Defendant matching the description of the suspect.[7] He stated that Defendant's appearance as soaking wet, and the Defendant's pants were pulled down around his ankles.[8] Cpl. McKinery observed the Defendant had glassy eyes, smelled of alcohol, and was slurring his words.[9] Cpl. McKinery further testified that Defendant's demeanor was cooperative, but "kind of nervous," and that Defendant mentioned several times that he was being chased."[10] Based on Defendant's appearance, he was handcuffed.[11]

At that time, Master Corporal Dakevis Howard ("M. Cpl. Howard"), who had responded to the scene, received the Defendant in custody.[12] He described the Defendant's slurred speech and stated his eye appeared "really wide."[13]

Cpl. McKinery then proceeded to the lobby of the Hampton Inn to speak with potential witnesses.[14] Cpl. McKinery spoke with a man named Michael Coates ("Coates"), who was seated in the lobby when Defendant entered the Hampton Inn.[15] Coates took three cell phone videos of Defendant and sent them to Cpl. McKinery

---

[6] DE-11, 6.
[7] *Id.*
[8] DE-08, 4.
[9] DE-11, 6.
[10] DE-08, 5.
[11] DE-11, 6.
[12] *Id.*
[13] *Id.*
[14] DE-08, 5.
[15] DE-11, 7.

through "AirDrop."[16]  Cpl. McKinery testified that although he didn't ask Coates specifically if he knew Defendant, Coates made "no indication" that he knew him.[17] Cpl. McKinery stated the videos were not altered and were the same videos he was shown by Coates.[18]  The videos depict the Defendant pacing around the lobby of the Hampton Inn, taking off a black sweatshirt, and pulling down his pants to expose his underwear.[19]

Corporal John T. Pullin ("Cpl. Pullin"), the State's Chief Investigating Officer, also responded to the scene of the collision.[20]  Cpl. Pullin testified that he was dispatched to a two-vehicle collision at the intersection of 301 and Main Street in Middletown at approximately 7:30 pm on June 22, 2022.[21]  Cpl. Pullin stated that the vehicles involved in the collision were a maroon sedan and black SUV.[22]  After running the tags of the maroon sedan, Cpl. Pullin positively identified the Defendant as the owner of the vehicle.[23]  In Defendant's vehicle, Cpl. Pullin observed in plain view two 24-ounce malt liquor cans in the front cup holder, a pipe consistent with those used to ingest crack cocaine, and a partial blunt found on the front driver floorboard.[24]

---

[16] *Id.*
[17] A-0037.
[18] DE-11, 7.
[19] *Id.*
[20] *Id.*
[21] DE-08, 6.
[22] DE-11, 7.
[23] *Id.*
[24] *Id.*

Cpl. Pullin spoke to a witness at the scene who provided him with photographs, taken on the witness's cell phone right after the collision occurred, of the Defendant fleeing the scene from the maroon vehicle.[25] Cpl. Pullin collected the photographs.[26] Cpl. Pullin stated that the clothing the Defendant was wearing matched the clothing in the photographs.[27] Additionally, Cpl. Pullin clarified that the officer never received any further information or description of a passenger of the Defendant's vehicle.[28]

The Defendant was transported to Christiana Hospital via ambulance.[29] After a blood warrant was signed and obtained, the Defendant's blood was drawn, and the toxicology report indicated his BAC was 0.10.[30]

## STANDARD OF REVIEW

In an appeal to the Superior Court, the standard of review is whether there is legal error and whether the factual findings made by the trial judge are sufficiently supported by the record and are the product of an orderly and logical deductive process."[31] If the Court of Common Pleas made findings that are supported by the

---

[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] DE-11, 8.
[29] *Id.*
[30] *Id.*
[31] *Onkeo v. State*, 957 A.2d, 2008 WL 3906076, at *1 (Del. Jul. 1, 2008) (TABLE); *Wheeler v. Clerkin*, 871 A.2d 1129, 2005 WL 873341, at *2, (Del. Apr. 13, 2005) (TABLE).

record, then this Court must accept them.[32] The Court may review questions of law *de novo*.[33]

Decisions by the Court of Common Pleas to admit or exclude evidence are reviewed by this Court under an abuse of discretion standard.[34] "An abuse of discretion 'occurs when a court has … exceeded the bonds of reason in view of the circumstances,' [or] … so ignored recognized rules of law or practice … as to produce injustice."[35] Reversal of a lower court's evidentiary decision is permitted only if there was a clear abuse of discretion.[36]

## ANALYSIS

The central dispute in this case is whether there was sufficient evidence to support the Trial Court's factual conclusion that the Defendant was the person operating the car at the time of the alleged events. Defendant challenges "whether any rational trier of fact, viewing the evidence in the light most favorable to the State could convict the Defendant on the charges against him. This Court disagrees with the Defendant and **AFFIRMS** the decision of the Trial Court.

Defendant maintains that the State provided no witness at trial who was present at the scene of the accident or who could place Stewart behind the wheel of

---

[32] *Id.*

[33] *DiSabatino v. State*, 808 A.2d 1216, 1220 (Del. Super. 2002) *aff'd*, 810 A.2d 249, 2002 WL 31546525 (Del. Nov. 2, 2002 (TABLE).

[34] *Delaware Acceptance Corp. v. Swain*, 2012 WL 6042644, at *3 (Del. Super. Nov. 30, 2012).

[35] *Id.* citing *Culp v. State*, 766 A.2d 486, 489 (Del. 2001) (quoting *Firestone Tire & Rubber Tire & Rubber Co. v. Adams*, 541 A.2d 567, 571 (Del. 1988)).

[36] *Delaware Acceptance Corp.*, 2012 WL 6042644, at *3.

5

the car at the time of the offense.[37] According to the Defendant the State's case largely depended upon the testimony of three Middletown police officers, each of whom testified at trial that they had not witnessed the accident nor had they seen Defendant behind the wheel of the car.[38] But this view of the facts ignores other evidence that supports the Trial Court's conclusion that the Defendant was the driver of the car.

As the finder of fact, the Court was free to base its decision on the photographs and what they showed. The Trial Court concluded that his review of the photographs led to the conclusion that it depicted the Defendant as the driver of the car.

> The officer testified that he couldn't identify the defendant as the person in the photo. I was shocked because I sure could. There's no question in my mind that the person in the photo is the defendant."[39]

In addition to reviewing the photographs the Court made an inference that, because the witness had decided to take photographs of the Defendant walking away from the vehicle after the collision, the Defendant was the driver of the vehicle. This conclusion is a logical inference and supported by the evidence.

Defendant takes issue with the Court's reliance on the photographs. There was no error in the Trial Court's reliance on the photographs. The trial court found that the State laid a proper foundation to sufficiently authenticate the photographs

---

[37] DE-08, 12.
[38] *Id*.
[39] A – 0141.

that Cpl. Pullin received from the witness, pursuant to *State v. Lewis*.[40] Particularly, the State presented evidence that the photos of the Defendant were obtained within a short period of being taken, the time of day was consistent with when the photos were taken, and the depiction of the area was consistent with the scene. Additionally, Cpl. Pullin testified that the photos were the same photos that he viewed on the witness's cell phone and the same photos he received from the witness.[41] Thus, the photos were admitted into evidence and could be considered by the Court in finding Defendant guilty.

Defendant argues that the use of the photograph is not sufficient to convict the him, based on *Barber v. State*,[42] in which the circumstantial evidence was deemed "too limited" to support the conviction.[43] However, unlike in *Barber* where the only evidence linking the Defendant to the crime was a single palm print, here the trial court based its ruling on evidence that the State presented at trial that showed the Defendant's clothing matched the description of the driver, the Defendant's clothing was soaked which was consistent with the path the suspect took through the retention pond when fleeing the scene, the Defendant was identified as the same person who entered the Bob Evans and the Hampton Inn, and the Defendant was the registered owner of the car.

---

[40] *State v. Lewis*, ID No. 151000348 (Del. Super. Ct. Jan. 13, 2021).
[41] A-0095-0099.
[42] 363 P.3d 459, 464 (Nev. 2015).
[43] *Id*.

This Court has recognized "in cases involving purely circumstantial evidence, the State need not disprove every possible innocent explanation."[44] The State was not required to present a case that refuted every "rational possibility" that could establish reasonable doubt as to the Defendant's guilt. Rather, the State's case, which permissibly relied on circumstantial evidence, was aimed at presenting enough evidence in which the trier of fact was firmly convinced of the Defendant's guilt, as required by its burden of proof.[45] To require the State to refute every "rational possibility" that could raise reasonable doubt would be imposing a higher burden of proof on the State than required by law.

Thus, any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the Defendant guilty beyond a reasonable doubt of DVUIA, LSCRI, and FRC, given the facts presented at Trial.

For the reasons stated above, the Court **AFFIRMS** the decision of the trial court.

**IT IS SO ORDERED.**

/s/ Francis J. Jones, Jr.
Francis J. Jones, Jr., Judge

*Original to Prothonotary*

---

[44] *See Monroe v. State*, at 567 (Del. 1995).
[45] *See Davis v. State*, 706 A.2d 523, 525 (Del. 1998); *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995); *Skinner v. State*, 575 A.2d 1108, 1121 (Del. 1990).

8